UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PAUL J. ST. JACQUES, JR.,

    Plaintiff,

v.                                                         Case No. 3:22-cv-98-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits (DIB).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly consider the medical opinions of Johnna Mantineo, D.O., and Robert Martin, M.D. As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    I.    *Background*

Plaintiff, who was born in 1971, claimed disability beginning January 16, 2019 (Tr. 175). He was 47 years old on the alleged onset date. Plaintiff obtained at least a high school education, and his past relevant work experience included work as a tractor trailer truck driver, a washer, and a maintenance supervisor (Tr. 42, 60-61, 277).

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

Plaintiff alleged disability due to spondylosis with myelopathy in the cervical region, dysphagia, digestive issues, irritable bowel syndrome, arthritis in the hip, lumbar spinal stenosis, pelvic floor dysmotility, hypertension, and arthritis in the shoulders and subscapular (Tr. 276).

Given his alleged disability, Plaintiff filed an application for a period of disability and DIB (Tr. 175-76). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 73-74, 85-88, 103-06, 112-24). Plaintiff then requested an administrative hearing (Tr. 110-11). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 36-72). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-35).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2024, and had not engaged in substantial gainful activity since January 16, 2019, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease status post cervical fusion, abnormality of major joints, sacrococcygeal disorders, hypertension, and obesity (Tr. 17). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following

limitations: could lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently; could stand/walk for about six hours and sit up for up to six hours in an eight-hour workday with normal breaks; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching, and crawling; frequent reaching in all directions, including overhead, bilaterally; must avoid concentrated exposure to hazards such as the use of moving machinery and unprotected heights; and was limited to occupations allowing for a sit/stand option, defined as allowing a person to sit or stand alternatively, at will, provided an individual is within employer tolerances for off-task behavior (Tr. 19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21).

    Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform his past relevant work (Tr. 28). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a ticket taker, a marker, and an assembler of plastic hospital products (Tr. 29). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 29-30). Given the

ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-11, 170-71). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

    II.    *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20

C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.

*Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

  III. *Discussion*

  Plaintiff argues that the ALJ erred by failing to properly consider the medical opinions of Drs. Mantineo and Martin. Under the regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. §§404.1520c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the

consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)-(v), (4), & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[2] 20 C.F.R. § 404.1520c(b)(2).

    A.    Dr. Martin

During his treatment of Plaintiff's chronic neck pain, Dr. Martin referred Plaintiff to a rehabilitation facility for a functional capacity evaluation (FCE) in February 2020 (Tr. 868-89). The FCE indicated that Plaintiff's occasional lifting capabilities remained at a light physical exertional level, meaning that he could lift no more than 20 pounds for up to one-third of the workday (Tr. 868). The examiner set forth the following limitations at the time of the evaluation: avoid lifting greater than 15 pounds bilaterally on an occasional basis; avoid kneeling; and avoid bending and

---

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

7

reaching for greater than on an occasional basis (up to 20 non-consecutive minutes in a given hour or up to 2.5 hours per workday) (Tr. 868).

Thereafter, in March 2020, Dr. Martin met with Plaintiff for a follow-up appointment regarding Plaintiff's chronic neck pain (Tr. 652-55). Dr. Martin indicated that Plaintiff remained essentially unchanged with his chronic neck pain, which radiated into the thoracic and lumbar areas, and noted that Plaintiff previously underwent multiple cervical surgeries with multilevel fusions and prior lumbar surgery as well as numerous orthopedic injuries and other surgeries (Tr. 655). As Dr. Martin observed, Plaintiff had undergone the FCE the month prior, which Dr. Martin believed showed that Plaintiff was significantly disabled (Tr. 655). Dr. Martin then stated that he would fill out Plaintiff's disability paperwork because, in his opinion, at that point it was not realistic to expect Plaintiff to be gainfully employed since, although Plaintiff could perform some activities, Plaintiff was markedly limited and could not tolerate implementation on a long-term basis (Tr. 655). As a result, Dr. Martin indicated that he would support Plaintiff's disability claim (Tr. 655).

Later that month, Dr. Martin completed a Medical Source Statement of Ability to do Work-Related (Physical) form in which he provided his opinion as to Plaintiff's limitations resulting from Plaintiff's physical impairments (Tr. 645-50). Dr. Martin found that Plaintiff could never lift or carry 21 to 100 pounds but could occasionally lift and carry up to 20 pounds (Tr. 645). He based Plaintiff's lifting and carrying restrictions on the February 2020 FCE (Tr. 645).

As to sitting, standing, and walking, Dr. Martin concluded that Plaintiff could sit for one hour at a time without interruption and for three hours total in an eight-hour workday; could stand for 20 minutes at a time without interruption and for two hours total in an eight-hour workday; and could walk for 20 minutes at a time without interruption and for two hours total in an eight-hour workday (Tr. 646). Dr. Martin indicated that Plaintiff would require frequent changes of position and lying down the rest of the eight-hour workday (Tr. 646). According to Dr. Martin, Plaintiff would not require use of a cane to ambulate but would need to elevate his legs with prolonged sitting (Tr. 646).

Dr. Martin also assessed Plaintiff with limitations in the ability to use Plaintiff's hands and feet and engage in postural activities (Tr. 647-48). Based on the February 2020 FCE, Dr. Martin determined that Plaintiff could frequently feel and finger frequently bilaterally and occasionally reach in all directions, handle, push, and pull bilaterally (Tr. 647). He opined that Plaintiff could only occasionally operate foot controls (Tr. 647). Dr. Martin further opined that Plaintiff had no limitations in kneeling, could frequently crouch, and could occasionally balance and stoop but never crawl or climb stairs, ramps, ladders, or scaffolds (Tr. 648).

Dr. Martin noted that Plaintiff would experience no limitations as to hearing or vision but would experience environmental limitations related to the impairments (Tr. 648-49). Namely, Dr. Martin found that Plaintiff could never tolerate exposure to unprotected heights; could occasionally tolerate exposure to moving mechanical parts, extreme cold, extreme heat, vibrations, and operating a motor vehicle; and could

frequently tolerate exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants (Tr. 649). He indicated that Plaintiff could also tolerate moderate noise (Tr. 649).

According to Dr. Martin, Plaintiff was capable of low-stress work but would be off task or have his symptoms interfere with his attention and concentration needed to perform even simple work tasks 25% or more of the workday (Tr. 647). He stated that Plaintiff's impairments would likely produce good days and bad days (Tr. 649). Given his findings, Dr. Martin concluded that Plaintiff would be absent from work for more than four days per month because of the impairments and treatment (Tr. 649). Notwithstanding those findings, Dr. Martin determined that Plaintiff could perform activities like shopping; could travel without a companion for assistance; could ambulate without using a wheelchair, walker, or two canes or two crutches; could walk a block at a reasonable pace on rough or uneven surfaces; could use standard public transportation; could climb a few steps at a reasonable pace with the use of a single hand rail; could prepare a simple meal and feed himself; could care for his personal hygiene; and could sort, handle, or use papers and files (Tr. 650). He opined, however, that Plaintiff should not lift more than 15 pounds, should engage in no overhead work, and should engage in limited bending given the extensive cervical fusions (Tr. 650). Finally, Dr. Martin concluded that these limitations lasted or would be expected to last for 12 consecutive months (Tr. 650).

  B. Dr. Mantineo

Less than two weeks later, Dr. Mantineo completed a Medical Source

Statement of Ability to do Work-Related Activities (Physical) form with substantially similar limitations to those set forth by Dr. Martin (Tr. 721-26). She found the same limitations as to lifting and carrying, but, in support of the noted limitations, she cited to Plaintiff's four cervical surgeries and four fused discs, January 2008 left bicep tear and repair, and June 2004 bilateral rotator cuff surgery in addition to the February 2020 FCE (Tr. 721). She concluded that Plaintiff would experience the same sitting, standing, and walking limitations but added that Plaintiff would need to recline in addition to frequently changing positions and lying down when not sitting, standing, or walking (Tr. 722). Dr. Mantineo also found the same limitations in the use of the hands bilaterally, citing to the February 2020 FCE in support, and the same limitations in operating foot controls, citing to Plaintiff's right hip pain and February 2019 surgery (Tr. 723). Except for adding a restriction to never kneel, Dr. Mantineo found the same postural limitations, basing her opinion on Plaintiff's history of multiple surgeries for his neck, ankle, hip, and knees that made it difficult for him to perform physical labor along with reported numbness and tingling throughout his extremities (Tr. 724). Otherwise, Dr. Mantineo identified the exact limitations that Dr. Martin identified, including limiting Plaintiff to not lifting more than 15 pounds, no overheard work, and limited bending due to Plaintiff's four cervical surgeries and fusions (Tr. 645-50, 721-26).

    C.    *ALJ Decision*

In determining Plaintiff's RFC, the ALJ thoroughly discussed Plaintiff's testimony, reports of daily activities, treatment records, and the medical opinions,

including the treatment notes and opinions from Dr. Martin and Dr. Mantineo (Tr. 19-27). After providing a detailed description of Plaintiff's treatment record, including treatment received before and after the alleged onset date,[3] the ALJ stated the following in support of the RFC for a reduced range of light work:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his [] symptoms, they are not entirely consistent because the physical exam findings, imaging studies and objective medical testing are not fully supportive as discussed herein.
>
> On February 1, 2019, the claimant underwent right hip arthroscopy with labral debridement, chondroplasty, and endoscopic trochanteric bursectomy, which was performed by Dr. William Browning. He reported "overall doing okay." Hypertension was stable on medications. In September 2019, Dr. Martin opined that the claimant was "relatively stable." In October 2019, the claimant reported significant improvement after cortisone injection. Hypertension remained stable on medications.
>
> The evidence also shows that prior to the alleged onset date, the claimant has a history of ACDF and fusion at C3-4, C4-5, C5-6 and C6-7. The claimant has received injective therapy through pain management throughout 2018, 2019 and 2020, for which his symptoms have been responsive. RFA, SCS and narcotic medications were also discussed as treatment options with a goal to limit narcotic requirements through a multimodal and multidisciplinary approach. The claimant presented for reevaluation of hip pain in November 2019 and reported that his left injection helped significantly until wearing off with return of lateral hip pain. He requested a repeat injection to the right hip bursa and he tolerated the procedure well. The claimant was noted as having a vacation coming up. It was recommended that he continue home

---

[3] Notably, the ALJ referenced Plaintiff's September 2018 FCE, which, like the February 2020 FCE, indicated that Plaintiff's occasional lifting capabilities remained at the light exertional level (Tr. 21, 367). The examiner during the September 2018 FCE indicated that Plaintiff would need to avoid lifting (floor to waist and waist to shoulder) greater than 25 pounds at a time; unscheduled breaks might be necessary with a need to change position at will from sit to stand; and Plaintiff should avoid reaching overhead and bending for greater than on an occasional basis (up to 20 non-consecutive minutes in a given hour or up to 2.5 hours per day) (Tr. 367). After discussing the September 2018 FCE, the ALJ indicated that he found it unpersuasive as it was dated well before Plaintiff's alleged onset date and was not applicable to the relevant period (Tr. 21).

>stretching exercise, and he would follow-up as scheduled. December 2019 primary care records note that the claimant traveled to New York and sat outside during the Macy's parade, while February 2020 primary care records note that the claimant had also traveled to London.
>
>The claimant's ability to travel, as documented in treatment records, is consistent with his range of activities of daily living. In his function report, he denied needing reminders to take medication, to take care of his personal needs or to go places. He could drive a car, which suggests that he is able to remember and follow directions, traffic laws and patterns. He reported that he is able to handle money including paying bills, counting change and handling a savings account. He reported that he could cook items on the grill occasionally (such as steaks, chicken or burgers) and sits down while cooking food. At the hearing, he testified that he is able to take care of his personal needs, including taking a shower, brushing his teeth and taking his medications, although he stated that he sometimes uses a built-in shower bench or sits on that bench while dressing. He reported that he is able to shop in stores but usually goes with his wife, although does not go often. He listed going to the following places on a regular basis: pharmacy, MJ dispensary, concerts with family or friends, or out to dinner, doctor appointments, pain management and PT. He denied having any problems with getting along with family, friends or neighbors. Overall, he denied having difficulty concentrating, remembering or making decisions; walking or climbing stairs; dressing or bathing or doing errands alone as indicated in treatment records. He also reported having [a] source of joy in his life. All of these activities are consistent with an ability for a reduced range of light exertion work.

(Tr. 25-26) (internal citations omitted). The ALJ then discussed the medical opinions and prior administrative findings, considering the opinions of the state agency medical consultants, Dr. Martin, Dr. Mantineo, the opinions set forth in the February 2020 FCE, and an opinion from an orthopedic provider (Tr. 26-28).

Specifically, with respect to Dr. Martin, the ALJ found Dr. Martin's opinion to be of limited persuasiveness (Tr. 26-27). The ALJ found Dr. Martin's opinions that Plaintiff could not perform full-time duty, as well as Dr. Martin's opinion that Plaintiff could do some activities but was markedly limited after the February 2020 FCE and

other similar opinions, lacked vocationally relevant terminology (Tr. 26, 359-91, 599-636, 645-50, 651-720). Next, the ALJ summarized Dr. Martin's findings and opinion on Plaintiff's functionality set forth in Dr. Martin's March 2020 Medical Source Statement of Ability to do Work-Related (Physical) form (Tr. 26-27, 645-50). The ALJ deemed the opinion of limited persuasiveness, concluding that Plaintiff's ability to travel to New York and London for vacation, Plaintiff's ability to sit outside for the Macy's parade, Plaintiff's good response to treatment with recent findings of right hip tronchanteric bursitis upon arthroscopy, recent MRI findings with no surgical recommendations, and the FCE finding that no assistive device was required for ambulation were all inconsistent with disabling limitations (Tr. 27). The ALJ concluded that those factors comported with a reduced range of light exertion work as specified within the RFC finding with no disabling limitations for 12 continuous months or more (Tr. 27).

As to Dr. Mantineo, the ALJ noted that Dr. Mantineo opined limitations consistent with Dr. Martin, as detailed above, and likewise found the opinion of limited persuasiveness (Tr. 27, 721-26). In doing so, the ALJ reiterated the rationale provided for finding Dr. Martin's opinion of limited persuasiveness – namely, that Plaintiff's ability to travel to New York and London for vacation, Plaintiff's ability to sit outside for the Macy's parade, Plaintiff's good response to treatment with recent findings of right hip tronchanteric bursitis upon arthroscopy, recent MRI findings with no surgical recommendations, and the FCE finding that no assistive device was required for ambulation were all inconsistent with disabling limitations (Tr. 27).

The ALJ again concluded that those factors comported with a reduced range of light exertion work as specified within the RFC finding with no disabling limitations for 12 continuous months or more (Tr. 27).

Plaintiff argues that the ALJ erred by failing to explain how she considered both the supportability and consistency factors in addressing the opinions of Dr. Martin and Dr. Mantineo. As the Commissioner contends, however, the ALJ did not need to use any specific language or apply a particular formula in assessing the supportability and consistency factors. *See Rivera v. Kijakazi*, Case No. 6:21-cv-93-AAS, 2022 WL 2965883, at *4 (M.D. Fla. July 27, 2022) ("The articulation requirement is met so long as the evaluation addresses the substance of the factors, regardless of the specific language used in the evaluation."); *Thaxton v. Kijakazi*, NO. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022)("However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record."). Rather, if the decision reflects that the ALJ properly considered the medical opinions, remand is not warranted.

In this instance, the ALJ demonstrated that she fully considered the treatment history from Dr. Martin and Dr. Mantineo, which goes to the supportability factor, along with the other evidence of record, which goes to the consistency factor, in setting forth Plaintiff's RFC (Tr. 19-28). The ALJ discussed evidence both in favor of and against a finding of disability, including some treatment notes indicating that Plaintiff experienced pain, tenderness, weakness, a limited or decreased range of motion,

decreased sensation, and an irregular gait and some treatment notes showing primarily unremarkable findings upon examination (Tr. 21-28, 339-40, 360-66, 434, 438, 440, 444-45, 456, 518-26, 600-04, 654-58, 687-720, 835-91).  In doing so, the ALJ recognized and acknowledged that Plaintiff endured several spine and joint surgeries that caused limitations, but she also addressed the evidence of record, including both Dr. Martin and Dr. Mantineo's treatment records, supporting a finding that Plaintiff could perform a reduced range of light work.  Based on the evidence of record, and specifically noting the evidence showing Plaintiff's good response to treatment, lack of demonstrated need for significant and recurrent surgical follow-up, ability to engage in interstate and international travel along with other significant activities of daily living, the lack of a medically necessary reason for use of an assistive device, and recent MRI and arthroscopy findings, the ALJ properly found both Dr. Martin's and Dr. Mantineo's opinions of limited persuasiveness.

     Plaintiff points to some evidence, such as the findings of tenderness, weakness, limited or reduced range of motion, and decreased sensation, in support of his argument that the ALJ failed to properly evaluate the medical opinions of Dr. Martin and Dr. Mantineo.  As noted above, however, the ALJ specifically considered those findings along with other unremarkable findings in setting forth Plaintiff's RFC.  Regardless, to the extent that Plaintiff asks me to reweigh the evidence or substitute my opinion for that of the ALJ, I cannot.  If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have reached a different

conclusion. *See Mitchell*, 771 F.3d at 782; *Bloodsworth*, 703 F.2d at 1239. "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). To reiterate, I may not reweigh the evidence or substitute my own judgment for that of the ALJ, even if I find the evidence preponderates against the ALJ's decision. *See Mitchell*, 771 F.3d at 782; *Bloodsworth*, 703 F.2d at 1239.

  IV. Conclusion

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. Accordingly, after consideration, it is hereby

  ORDERED:

  1. The decision of the Commissioner is AFFIRMED.

  2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

  DONE AND ORDERED in Tampa, Florida, on this 21st day of March, 2023.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record